IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LISA A. CEOLLA, as TRUSTEE for the CEOLLA REVOCABLE LIVING TRUST<br><br>　　Plaintiff,<br><br>v.<br><br>ACOSTA, INC., as plan administrator for the Acosta, Inc., Employee Benefit Plan; SUN LIFE ASSURANCE COMPANY OF CANADA; and ACOSTA, INC., EMPLOYEE BENEFIT PLAN,<br><br>　　Defendants. | Civil Action No. |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

COMES NOW, Plaintiff, Lisa A. Ceolla, as Trustee for the Ceolla Revocable Living Trust and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Life Insurance benefits due under an employee benefits plan and for Defendants' other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1.　This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 *et seq.*, and the subject Benefit Plan constitutes a "plan under ERISA."

2.　The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits

[1]

denials. In this case, those avenues of appeal have been exhausted and this matter is now ripe and properly before this Court for judicial review.

3. Venue is proper in Middle District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2) as a place where a defendant resides and may be found. Specifically, Defendant Acosta, Inc. ("Acosta") maintains a place of business at 2715 Westwood Drive, Nashville, Tennessee 37204.

## PARTIES

4. The Ceolla Revocable Living Trust (the "Trust") is an administrative trust established upon the death of Michael P. Ceolla, which occurred on March 27, 2017, pursuant to the terms of the Trust dated November 14, 2016. Lisa A. Ceolla is Trustee of the Trust. At the time of his death, Michael P. Ceolla resided at 1268 Brayshore Drive, Collierville, Tennessee 38017. Trustee Lisa A. Ceolla currently resides at 1268 Brayshore Drive, Collierville, Tennessee 38017, and is subject to the jurisdiction of this Court.

5. Defendant Sun Life Assurance Company of Canada ("Sun Life") is the insurance company which issued the policy, number 237660-001, which insures Employee Basic Life Insurance and Employee Optional Life Insurance benefits due under the relevant components of the Acosta Inc. Welfare Benefit Plan (the "Plan").

6. Sun Life is the party obligated to pay benefits and to determine eligibility for benefits due under the Plan.

7. Sun Life is an insurance company authorized to transact the business of insurance in this state and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

8. Acosta, Inc. Employee Benefit Plan (the "Plan") is an employee welfare benefit plan established and maintained pursuant to ERISA, 29 U.S.C. § 1001, *et. seq.*, and is an entity that may sue and be sued pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

9. The Plan is ultimately responsible for the payment of benefits due under the Plan, regardless of whether the Plan's insurer, Sun Life, is responsible under the terms of the insurance policy issued to the Plan Administrator.

10. The Plan may be served with process through its Plan Administrator, Acosta, Inc. ("Acosta"), at the location listed on the Summary Plan Description for service of process on the Plan: 6600 Corporate Center Parkway, Jacksonville, Florida 32216.

11. Acosta is the Plan Sponsor and Plan Administrator of the Plan, and may be served through its registered agent Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

## FACTS

### *Enrollment & Coverage*

12. Michael Ceolla ("Ceolla") became a full-time, exempt employee of Acosta on or around September 1, 2012, and remained an employee of Acosta until his death on March 27, 2017. At all times relevant hereto, Ceolla was entitled to Acosta employee benefits provided under the Plan.

13. On or around January 1, 2015, Acosta contracted with Sun Life to provide various benefits to employees of Acosta. The benefits at issue in this case are set forth in insurance Policy Number 237660-001 (the "Policy"). The Policyholder is Acosta, Inc., and the Policy effective date is January 1, 2015.

14. Ceolla was eligible for benefits detailed in the Policy.

[3]

Case 3:18-cv-00587   Document 1   Filed 06/26/18   Page 3 of 14 PageID #: 3

15. By virtue of his full-time employment with Acosta, Ceolla automatically received a benefit of $135,000 in Basic Life Insurance coverage, and Acosta paid the monthly premium for that benefit.

16. Also available under the Policy, Acosta employees, including Ceolla, had the option to purchase additional life insurance beyond the Basic Life Insurance coverage paid for by Acosta. The additional life insurance coverage offered to employees was known as Optional Life Insurance in the Policy. Employees who desired to obtain Optional Life Insurance enrolled for that benefit through Acosta, and Acosta withheld the premiums for the Optional Life Insurance coverage and tendered those premiums to Sun Life.

17. During the 2016 benefit enrollment period, which would have occurred in the final months of 2015, Ceolla purchased Optional Life Insurance in the amount of $190,000. To purchase the $190,000 Optional Life Insurance, Ceolla worked with one or more Acosta benefits coordinators to properly purchase and enroll for the Optional Life Insurance benefit.

18. To confirm Ceolla's benefits for calendar year 2016, Acosta sent Ceolla a 2016 Annual Enrollment Confirmation Statement certifying that Ceolla had purchased Optional Life Insurance coverage in the amount of $190,000. For the coverage period of calendar year 2016, Acosta withheld premiums for the Optional Life Insurance and paid those premiums to Sun Life.

19. During the 2017 benefit enrollment period, which would have occurred in the final months of 2016, Ceolla once again worked with the appropriate Acosta benefits coordinator(s) to purchase additional coverage under the Optional Life Insurance provision of the Plan. During the 2017 benefit enrollment period, and with the assistance of Acosta benefits coordinators, Ceolla enrolled for and purchased Optional Life Insurance coverage in the amount of $670,000.

20. For calendar year 2017, Acosta withheld premiums in an amount commiserate with $670,000 worth of Optional Life Insurance coverage for the months of January, February, and March 2017 (the month of Ceolla's death) and paid those premiums to Sun Life.

21. Acosta provided Ceolla confirmation in writing that he had purchased $670,000 in Optional Life Insurance in multiple ways. First, Acosta provided Ceolla with a 2017 Annual Enrollment Confirmation Statement that affirms Ceolla properly obtained Optional Life Insurance in the amount of $670,000. The 2017 Annual Enrollment Confirmation Statement provided that the $670,000 Optional Life Insurance coverage, along with the other benefit elections, would be effective from January 1, 2017, until December 31, 2017. Notably, at the bottom of the 2017 Annual Enrollment Confirmation Statement, Acosta advised employees to "PLEASE RETAIN FOR YOUR RECORDS". A copy of the 2017 Annual Enrollment Confirmation Statement is incorporated herein and attached to this Complaint as Exhibit A.

22. Also, after January 1, 2017, Ceolla maintained contact with Acosta benefits coordinators because, among other reasons, Ceolla believed that the approximately $202 per month premium charged for the $670,000 Optional Life Insurance was excessive.

23. Regarding the $202 monthly premium, Acosta benefits coordinator Jackie McNeil confirmed via email that the $202 per month premium was correct and went on to explain that the premium was "higher than a life insurance plan you would purchase from a local agent because it does not require evidence of good health." Acosta benefits coordinator McNeil went on to explain that the "the carrier knows they are taking a risk and rates the plan with the risk accounted." A copy of the email exchange between Acosta benefits employee Jackie McNeil and Ceolla is incorporated herein and attached to this Complaint as Exhibit B.

[5]

Case 3:18-cv-00587   Document 1   Filed 06/26/18   Page 5 of 14 PageID #: 5

24. Moreover, on or around February 6, 2018, Acosta provided Ceolla, at his request, a statement titled "Benefits Enrollment Confirmation" to verify the benefits due Ceolla under the Plan and the premiums to be paid by Ceolla under the Policy provided by Sun Life. A copy of the Benefits Enrollment Confirmation is incorporated herein and attached to this Complaint as Exhibit C.

25. The Benefits Enrollment Confirmation generated by Acosta confirmed—once again—that Ceolla had purchased and subscribed to $670,000 in Optional Life Insurance through the Policy and that the premium, paid by Ceolla, due each pay period totaled $202.55.

26. The Benefits Enrollment Confirmation indicated—once again—that the "Effective Date" of the $670,000 Optional Life Insurance provided by the Policy was January 1, 2017.

27. Through withholding by Acosta, Ceolla timely paid the premiums to Sun Life for the Optional Life Insurance provided to Acosta employees under the Policy.

28. At no time during his life was Ceolla ever informed by anyone that he was not eligible for the coverage in the amounts stated above. Indeed, the opposite was true. Acosta *confirmed* in writing on multiple occasions that Ceolla was properly enrolled for the $670,000 Optional Life Insurance benefit.

*Loss, Claim & Request for ERISA Documents*

29. Ceolla died on March 27, 2017.

30. Ceolla designated the Trust as his sole beneficiary for benefits due under the Policy.

31. Acting in her capacity as Trustee for the Trust, Lisa Ceolla timely filed a claim for life insurance benefits covered by the Policy, and Sun Life approved the claim to the extent of $367,172.50, which it considered was the maximum amount of life insurance due under the Policy.

32. Sun Life acknowledged that Ceolla was covered for $190,000 in Optional Life Insurance for calendar year 2016, but denies Ceolla was eligible to upgrade to $670,000 in Optional Life Insurance coverage for calendar year 2017.

33. Instead, Sun Life contends that the Policy requires Evidence of Insurability ("EOI") for an annual elected increase of more than $40,000.00. In short, according to Sun Life, Ceolla was only allowed to increase his 2017 Optional Life Insurance by $40,000—from $190,000 to $230,000.

34. Therefore, when Sun Life purported to pay the Plaintiff's claim for benefits, Sun Life's $367,172.50 benefit amount breaks down as follows: $135,000 in Basic Life provided by Acosta; $230,000 in Optional Life Insurance; plus 2.75% interest from Ceolla's death until payment.

35. Sun Life denied the remainder of the claim, which is calculated by subtracting the Optional Life Insurance amount paid ($230,000) from the Optional Life insurance amount Ceolla bought and enrolled for through Acosta ($670,000), for a total of $440,000 in unpaid benefits, not including interest.

36. The Trust timely appealed the denial of Plan benefits.

37. Sun Life denied the Trustee's appeal by letter dated May 21, 2018.

38. Sun Life's May 21, 2018, letter stated that all administrative remedies were exhausted and that the letter served as the final determination of the Trust's claim. Further, the Trust had a right to bring a civil action under ERISA § 502(a) in further pursuit of this claim.

39. On or around October 24, 2017, the Trust, by and through the undersigned counsel, made its first request in writing ("First Request") for a copy of the relevant ERISA Plan documents from the Plan Administrator. A copy of the First Request for relevant ERISA Plan documents is incorporated herein and attached to this Complaint as Exhibit D.

[7]

Case 3:18-cv-00587   Document 1   Filed 06/26/18   Page 7 of 14 PageID #: 7

40. The Plan Administrator failed and refused to respond to the First Request for ERISA Plan documents.

41. On or around December 14, 2017, the Trust, by and through the undersigned counsel, made its second request in writing ("Second Request") for a copy of the relevant ERISA Plan documents from the Plan Administrator. A copy of the Second Request is incorporated herein and attached to this Complaint as Exhibit E.

42. The Plan Administrator failed and refused to respond to the Second Request for ERISA Plan documents.

43. On or around January 25, 2018, the Trust, by and through the undersigned counsel, made its third request in writing ("Third Request") for a copy of the relevant ERISA Plan documents from the Plan Administrator. A copy of the Third Request is incorporated herein and attached to this Complaint as Exhibit F.

44. On February 6, 2018, the Plan Administrator, by and through counsel, responded to the Third Request by stating that Acosta "is in the process of gathering the documents and information" requested.

45. It was not until March 8, 2018, that the Plan Administrator produced some, though not all, of the relevant ERISA Plan documents.

46. All Defendants owed Ceolla and the Trust duties as fiduciaries of the ERISA Plan, including a duty of loyalty and a duty to communicate.

47. All Defendants breached their fiduciary duties to Ceolla and the Trust, including the duty of loyalty and the duty to communicate.

48. Sun Life would pay any benefits due under the terms of the Policy out of its own funds.

49. Sun Life was under a perpetual conflict of interest because the benefits due under the Policy would have been paid out of its own funds.

50. Sun Life allowed its concern over its own funds to influence its decision making.

## FIRST CAUSE OF ACTION
## FOR EQUITABLE RELIEF AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C.§ 1132(a)(3)

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

51. Defendants Sun Life and Acosta are fiduciaries of the Defendant Plan and owe fiduciary duties to all Plan participants and beneficiaries, including the decedent and the Plaintiff.

52. Among the fiduciary duties owed to Plan participants and beneficiaries is a duty to "convey complete and correct material information to a beneficiary," including a "duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know. . ." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999).

53. Ceolla did not know that a so-called Evidence of Insurability form (EOI) was required for any elected annual increase of $40,000 or more under the Policy.

54. Defendants nevertheless allowed Ceolla to increase his Optional Life Insurance so that his total life insurance benefit totaled $670,000.

55. Defendant Acosta provided Ceolla written confirmation on multiple occasions that his total life insurance benefit equaled $670,000 and that amount of coverage was effective January 1, 2017.

[9]

Case 3:18-cv-00587   Document 1   Filed 06/26/18   Page 9 of 14 PageID #: 9

56. Defendant Acosta deducted premiums sufficient to pay for the $670,000 life insurance benefit and tendered all or a portion of those premiums to Defendant Sun Life, who accepted the premium payments.

57. The Defendants did not tell Ceolla at any time he was not eligible for the insurance he signed up for and then paid premiums for.

58. The Defendants have refused to provide the entire $670,000 benefit promised to Ceolla.

59. The Defendants breached their fiduciary duties to Ceolla by failing to inform him of material facts concerning the Plan, which he did not know but needed to know.

60. The Defendants breached their fiduciary duties to Ceolla by affirmatively misleading him as to the amounts of insurance coverage for which he was allowed to enroll and as to the amounts of insurance coverage in which he was enrolled.

61. The Defendants breached their fiduciary duties to Ceolla by withholding insurance premiums from his paychecks for coverage he was not allowed to have and by misleading him as to the amount of insurance he had.

62. Ceolla relied on Defendants' representations and acts, including the withholding of premiums, that he had $670,000 in life insurance coverage under the Policy by not acquiring other coverage.

63. ERISA § 502(a)(3) provides that a civil action may be brought:

> (3) by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief
>     (i) to address such violations or
>     (ii) to enforce any provision of this subchapter or the terms of the plan. . .

64. Accordingly, § 502(a)(3) allows Plaintiff to bring a claim against the Defendants for breach of fiduciary duty. As a result of Defendants' breach of fiduciary duty, Plaintiff is entitled to recover appropriate equitable relief.

65. Relief in the form of monetary compensation—sometimes called a "surcharge"—for a loss resulting from the Defendants' breach of fiduciary duty may be awarded under § 502(a)(3). See *Cigna Corporation, et al. v. Amara*, 563 U.S. 421, 442 (2011) ("The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.")

66. A fiduciary under ERISA can be surcharged under § 502(a)(3) upon a showing of actual harm by the plan participant or beneficiary.

67. As a direct result of Defendants' breach of their fiduciary duties, Plaintiff, as designated beneficiary under the Policy, suffered actual harm.

## SECOND CAUSE OF ACTION
## PENALTY FOR FAILURE TO PROVIDE PLAN DOCUMENTS
## PURSUANT TO 29 U.S.C. § 1132(c), ERISA § 502(c) AGAINST
## ACOSTA, INC. HEALTH AND WELFARE PLAN

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

68. Plaintiff, through the undersigned counsel, sent three individual requests via certified mail, return receipt requested, to the Plan Administrator requesting relevant ERISA Plan documents. See attached Exhibits D, E, and F.

69. Each request sent to the Plan Administrator contained specific language informing the Plan Administrator that ERISA § 502(c), 29 U.S.C. § 1132(c), requires production of documents and if those documents are not timely provided a statutory penalty of up to $110.00 per day applies.

70. As ERISA fiduciaries, the Plan Administrator was responsible for providing timely, accurate, and complete information and documents to the Plaintiff.

71. The Defendant Plan Administrator failed and refused to provide the requested documents within the timeframe provided in the statute and said failure is a violation of ERISA § 502(c), 29 U.S.C. § 1132(c).

72. Eventually, the Plan Administrator did provide some documents, but as of the filing of this Complaint, the Plan Administrator has not provided all relevant ERISA Plan documents.

73. Pursuant to 29 U.S.C. § 1132(c), Defendant Plan Administrator Acosta, Inc. is liable to Plaintiff for penalties in an amount up to $110.00 per day from November 23, 2017, which is thirty (30) days after the date of Plaintiff's First Request for the Plan documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant it the following relief in this case:

**Plaintiff's First Cause of Action:**

1. A finding in favor of Plaintiff against all Defendants;

2. A finding that Defendants are estopped from enforcing the terms of the Plan as written as it pertains to Plaintiff's eligibility due to the Defendants' misrepresentations and failure to inform and misleading the participant and beneficiary about the terms of the Plan;

3. Reformation of the terms of the Plan to allow Ceolla to have the coverage he bargained for and enrolled in and paid premiums for, as an equitable remedy for Defendants' breach of their fiduciary duties;

4. Damages in the amount equal to the amount of unpaid benefits due under the terms of the Plan, either as a "surcharge" pursuant to ERISA § 502(a)(3) or under

the reformed terms of the Plan under ERISA § 502(a)(1)(B) pursuant to *Cigna Corporation, et al. v. Amara et al.*, 563 U.S. 241 (2011), or such other equitable remedy as the Court should find proper;

5. Damages in the amount of profits Defendants have earned on the money wrongfully withheld from Ceolla, as disgorgement of unjust enrichment.

6. Prejudgment and postjudgment interest;

7. An Order requiring Defendants to pay any other benefits available under the Plan or available by operation of other employee benefit plans, to the extent applicable;

8. Plaintiff's reasonable attorney's fees and costs pursuant to ERISA § 502(g); and

9. Such other relief as this Court deems just and proper.

**Plaintiff's Second Cause of Action**

10. A penalty from Defendant Plan Administrator Acosta, Inc. in an amount representing up to $110 per day from November 23, 2017, through such time the entire ERISA record is provided to Plaintiff as required under 29 C.F.R. § 2560.503-1(g)(1), and pursuant to 29 U.S.C. § 1132(c)(1);

11. An Order from the Court that the Plan Administrator provide a copy of the official version of the plan documents, including the Plan itself, as well as any summary plan description, insurance policy, or other documents under which the Plan was operated.

12. Plaintiff's reasonable attorney's fees and costs;

13. Prejudgment and postjudgment interest; and

14. Such other and further relief as this Court deems just and proper, including, but not limited to, limiting the documents that the Defendants may rely on to those documents provided to the Plaintiff prior to filing this suit.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff a bound copy of the ERISA record consecutively paginated, as well as any Plan Documents that were requested that have not yet been provided by the Plan Administrator.

Dated this 26th day of June, 2018.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: */s Hudson T. Ellis*
Eric L. Buchanan (#018568)
Hudson T. Ellis (#028330)
414 McCallie Avenue
Chattanooga  TN  37402
(423) 634-2506
FAX:  (423) 634-2505